**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN ANTHONY CLARO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2398 |
| | § | |
| MARK A. MASON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this diversity case, plaintiff John Claro, a lawyer who lives and practices in Oklahoma, has sued a South Carolina law firm and three of the firm's lawyers who work and live in South Carolina. Claro asserts a malicious prosecution cause of action under Texas law. (Docket Entry No. 1). Claro alleges that the defendants, the Mason Law Firm, P.A., Mark Mason, Anthony Forsberg, and Amanda McKendrick Davis, transmitted false information about him to an agent with the Federal Bureau of Investigation, an investigator with the Department of Labor, and an Assistant United States Attorney, all in Houston, Texas. These federal agents were investigating suspected fraud involving ERISA health insurance plans that had a number of unpaid benefit claims. Claro was indicted in March 2004 in the United States District Court for the Southern District of Texas, Houston Division, for his role as counsel for some of the entities involved in these ERISA health plans. The indictment was dismissed in July 2005, without prejudice, but not refiled. In this malicious prosecution suit, Claro alleges that the defendants provided false information to the federal

officials to procure an indictment against him that would not otherwise have issued.  Claro alleges that the defendants sought the indictment to obtain an advantage in a civil damages suit they had filed against him on behalf of a client in South Carolina.

The defendants moved to dismiss this malicious prosecution suit for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6).  The defendants alternatively moved to transfer to the Federal District Court in South Carolina, where the civil suit their client had filed against Claro was pending, or to stay until that suit was resolved.  That suit was settled in February 2007, making the motion to transfer or stay moot.

Claro has responded to the motion to dismiss, (Docket Entry No. 15).  The defendants have replied, (Docket Entry No. 20), and Claro has surreplied, (Docket Entry No. 23).  Based on a careful review of the pleadings, the motion, responses, and replies, the parties' submissions, and the applicable law, this court grants the defendants' motion to dismiss for lack of personal jurisdiction.  The reasons are set out below.

## I.    Background

This suit is one of several actions involving Claro and the Mason Law Firm and its lawyers.  The Mason Law Firm represents the Connelly Management Company and its owner, James Connelly.  Connelly Management is a South Carolina company that owns and operates nursing homes in South Carolina and Georgia.  Connelly Management set up an ERISA plan that had numerous unpaid benefit claims after North American Indemnity, NV, a reinsurance company, defaulted.  Claro represented Connelly Management and others in

a class-action suit initially filed in the Southern District of Texas, Houston Division, in 2001. In that suit, *Rock City Mechanical Plan, Connelly Management Employee Welfare Benefit Plan, et al. v. North American Indemnity, NV*, Civil Action No. H-01-4477, (the "NAI Class Action"), Claro represented Connelly Management as a named plaintiff for a class defined to include over 400 employers with claims for medical benefits under ERISA plans that were not paid by North American Indemnity, NV.  In early 2003, the United States Court of Appeals for the Fifth Circuit reversed the Houston district court's certification of the class of employer ERISA plans and remanded the case to the district court.  *Pedcor Management, Inc. v. Nations Personnel of Texas, Inc., et al.*, 343 F.3d 355 (5th Cir. 2003).  In November 2003, the Houston district court judge transferred the NAI Class Action to the federal district court in Charleston, South Carolina, where the case is pending as *NAI Employer Class Action Litigation,* Civil Action No. 2:03-cv-3603.  The docket sheet shows that the case is stayed until April 2007.

On July 22, 2002, Connelly and Connelly Management sued a number of defendants in the federal district court for the District of South Carolina, Charleston Division, in Civil Action No. 2:02-cv-2440.   The defendants included American Heartland Health Administrators, Inc., a third-party ERISA plan administrator that Claro had represented in setting up the ERISA plan.  In that suit, Connelly and Connelly Management, represented by Mason and the Mason Law Firm, sought damages resulting from the failure of Connelly Management's ERISA plan to pay medical benefit claims to plan participants.  Connelly and

Connelly Management obtained a default judgment against a number of defendants in that suit, which was closed on March 21, 2006.

On September 19, 2003, Connelly and Connelly Management, represented by Mason and the Mason Law Firm, filed a legal malpractice suit against Claro in South Carolina federal district court. In that case, *Connelly Management, Inc. et al. v. John A. Claro, et al.*, Civil Action No. 2:03-cv-3005, the plaintiffs alleged that Claro had been involved in an ERISA health insurance fraud scheme that had resulted in numerous unpaid benefit claims by participants in the Connelly Management ERISA plan. The plaintiffs also alleged that Claro had committed malpractice in representing Connelly Management in the NAI Class Action litigation. The plaintiffs alleged that Claro had a conflict of interest in that he was suing persons or entities that he had been involved with in setting up similar ERISA plans. (Docket Entry No. 14 at 3). That South Carolina suit settled on February 7, 2007.

The malicious prosecution suit pending in this court is based on the Houston criminal indictment issued against Claro and others in March 2004 arising from the ERISA plan defaults. On February 11, 2003, Mason received a subpoena to testify before a Houston federal grand jury. (Docket Entry No. 14 at 2). The subpoena stated:

> Please provide any and all documents relating in any way to Connelly Management's dispute with American Heatland [sic] Health Administrators, et. al., excluding any documentation relating to attorney work product or attorney client privilege.

(Docket Entry No. 14, Ex. A at 2). The subpoena also stated that "[i]n lieu of actual appearance before the Federal Grand Jury in Houston, the documents may be sent to FBI,

S/A Ray Jackson [in Houston]."  (*Id.* at 1).  The subpoena stated, "[t]his subpoena shall

remain in effect until you are granted leave to depart by the court or by an officer acting on

behalf of the court."  (*Id.*)

The parties have submitted descriptions of the communications from the defendants

to the federal investigators after the grand jury subpoena issued in February 2003.  The

record shows the following contacts:

- An associate with the Mason Law Firm, Davis, mailed documents on March

  21, 2003 from South Carolina to FBI Special Agent Ray Jackson in Houston,

  Texas.  The cover letter stated, "[i]n completion of your request, enclosed

  herewith are copies of the documents and materials relating to the dispute

  between Connelly Management, and American Heartland." (Docket Entry No.

  15, Ex. 9).

- On May 9, 2003, Davis sent documents from South Carolina to Mike

  Ebbesen, an investigator at the Department of Labor, in Houston.  The cover

  letter stated, "[p]lease find enclosed the set of documents we recently obtained

  from Gary Hoskie of Professional Consultants Managers." (Docket Entry No.

  15, Ex. 1).

- On September 19, 2003, Davis sent a cover letter with enclosures to FBI

  Special Agent Jackson.  That letter stated, "[p]lease find enclosed herewith a

  copy of the Report of Connelly Management to the United States District

  Court for the Southern District of Texas, Houston Division of the Status of

Related Litigation Pending in the United States District Court for the District of South Carolina, Charleston Division and of Proceedings in Nassau, Bahamas. Also enclosed are the exhibits referenced in that report." (Docket Entry No. 15, Ex. 11).

- On December 1, 2003, Davis sent documents from South Carolina to Ebbesen at the Department of Labor in Houston. The cover letter stated, "[p]lease find enclosed herewith a copy of the notebook and CD-ROMs provided by Mr. Trevor Jones of Insurance Security Services." (Docket Entry No. 15, Ex. 2).

- On December 2, 2003, another lawyer with the Mason Law Firm, Forsberg, sent documents to Ebbesen at the Department of Labor. The cover letter stated, "[e]nclosed please find the flowcharts in PowerPoint format. Sorry it took so long." (Docket Entry No. 15, Ex. 3).

- On December 18, 2003, Mason sent an eight-page fax from South Carolina to Ebbesen in Houston. (Docket Entry No. 15, Ex. 4).

On March 25, 2004, a federal grand jury in the Southern District of Texas indicted Claro and others in Criminal Action No. 04-0126. (Docket Entry No. 1 at 4). According to the defendants, this indictment was part of a long-standing criminal investigation by the U.S. Attorney's office, the FBI, and the Department of Labor. (Docket Entry No. 14 at 5). None of the defendants testified before the federal grand jury in Houston. The defendants argue that there is no evidence that the documents they sent the federal investigators after the February 2003 subpoena were presented to the grand jury. (*Id*.).

6

Claro alleges that the defendants procured the indictment against him by "knowingly furnish[ing] false information to federal law-enforcement officers and/or directly to the prosecutor who possessed discretion about whether to prosecute. The false information was furnished through 'reports,' letters, documents, and filings authored by the Defendants, and other data." (Docket Entry No. 1 at 7). Claro alleges that but for the defendants' actions, the indictment would not have been sought or returned against him. Claro alleges that the defendants' objective was to force him to "demand settlement from his bar insurance carrier of the lawsuit Defendants had filed in South Carolina." (*Id.* at 15).

The record reveals that Mason, Forsberg, and Davis had Texas contacts in addition to sending documents to the federal agents conducting the criminal investigation into the ERISA plan failures. Some of those contacts were before the indictment issued in March 2004 but unrelated to the criminal investigation that resulted in the indictment. Some of those contacts were related to the criminal investigation but occurred after the indictment issued. These Texas contacts are as follows:

- On September 7, 2004, after the indictment issued, the  Mason Law Firm sent a letter to Assistant United States Attorney Mary Jane Harmon. That letter stated, "[p]ursuant to the Grand Jury Subpoena served on Mark A. Mason, please find a copy of the videotape deposition of Mr. Colin Honess of Jerome E. Pyfrom & Co. located in Nassau, Bahamas." (Docket Entry No. 15, Ex. 6).

- On December 7, 2004, Mason traveled to Houston, Texas to meet with AUSA Harmon, FBI Special Agent Jackson, and Ebbesen, the Department of Labor investigator.  (*Id*.).

- On January 10, 2005, Mason sent a letter to AUSA Harmon.  That letter stated, "[p]ursuant to the Grand Jury Subpoena of which I have been served, please enclosed [sic] two (2) CD-Roms containing documents Bates stamped WM 00001 through WM 00124 (Documents received from Professor Walter Missorten) and WHS 00001 through WHS 03901 (Documents received from Shawn Coulson law firm)."  (Docket Entry No. 15, Ex. 7).

- In May 2005, Mason filed subpoenas in the Southern District of Texas for depositions of witnesses who lived in this district, to be taken in the civil case Connelly and Connelly Management had filed against Claro in South Carolina. In Miscellaneous Case No. 4:05-mc-00210, Mason was ordered to appear in Houston federal district court in June 2005 for a hearing on a motion to quash the subpoenas.  The court granted the motion to quash.  (Misc. Action No. 05-mc-210, Docket Entry No. 26).

- On July 13, 2005, the Mason Law Firm sent a cover letter to AUSA Harmon. That letter stated, "[p]lease find enclosed a corrected copy of the documents produced by Worldwide Trust Services Limited and Jerome E. Pyfrom." (Docket Entry No. 15, Ex. 5).

8

On July 20, 2005, the indictment against Claro was dismissed without prejudice.  On July 19, 2006, Claro filed this action, alleging that the defendants committed the tort of malicious criminal prosecution under Texas law.  The defendants have filed a motion to dismiss for lack of personal jurisdiction.  Each individual defendant has filed an affidavit describing the contacts with Texas and actions responding to the February 2003 subpoena. (Docket Entry No. 14, Exs. F, G, H).

The threshold issue is personal jurisdiction.

## II.     The Applicable Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).  Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); TEX. CIV. PRAC. & REM.. CODE ANN. § 17.041–.045.

Due process requirements for exercising personal jurisdiction over a nonresident have been defined by the United States Supreme Court in a familiar body of case law.  *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985).  The due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 158 (1945).   "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183 (1985)).   "There must be some act whereby the [nonresident] defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.*

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant.   That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary.   *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).   "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."   *Id.*   "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."   *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985) (quoted in *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir. 1990)).   However, the court is not obligated to credit conclusory allegations, even if uncontroverted.   *Panda Brandywine Corp. v.*

10

*Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).  The "plaintiff's prima facie

showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts

that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the

defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996);

*Hartford Fire Ins. Co. v. Hutchinson*, 2006 WL 903715, at *2 (S.D. Tex. Apr. 6, 2006) ("A

plaintiff may present a prima facie case by producing admissible evidence which, if believed,

would suffice to establish the existence of personal jurisdiction.").

Minimum contacts can be established through "contacts that give rise to 'specific'

personal jurisdiction and those that give rise to 'general' personal jurisdiction."  *Wilson v.

Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  A court may exercise specific jurisdiction when:

(1) the nonresident defendant purposely availed itself of the privileges of conducting

activities in the forum state; and (2) the controversy arises out of or is related to the

defendant's contacts with the forum state.  *Freudensprung v. Offshore Tech. Serv.*, 379 F.3d

327 (5th Cir. 2004) (citations omitted); *Religious Tech. Ctr.*, 339 F.3d at 375; *Quick Techs.,

Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)*; Gundle Lining Const. Corp. v.

Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros

Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414 n.8 (1984).  To determine whether

specific jurisdiction exists, a court must "examine the relationship among the defendant, the

forum, and the litigation to determine whether maintaining the suit offends traditional notions

of fair play and substantial justice."  *Gundle Lining Const.,* 85 F.3d at 205; *Helicopteros

Nacionales*, 466 U.S. at 414, n.8.  "The non-resident's 'purposeful availment' must be such

that the defendant 'should reasonably anticipate being haled into court' in the forum state."
*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15; *Bearry v. Beech Aircraft Corp.* 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine,* 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (citations omitted)).

## II.    Analysis

### A.    General Personal Jurisdiction

It is undisputed that the Mason Law Firm and the individual lawyer defendants do not have an office in Texas; do not have an agent or representative in Texas; do not own or rent property in Texas; do not pay taxes in Texas; do not have bank accounts in Texas; do not have regular or ongoing business in Texas; and do not advertise in Texas. As to the

12

individual defendants, it is also undisputed that they have never resided in Texas and are not licensed to practice law in Texas.

Claro does not appear to argue that general personal jurisdiction is present and the record would not support such an argument.  Davis has been to Texas only once, stopping when she was a teenager in a Texas airport to catch a connecting flight.  (Docket Entry No. 14, Ex. G at 2).  Mason and Forsberg made one trip to Houston in September 2003, before the indictment issued, related to the NAI Class Action in which Connelly Management was a named plaintiff represented by Claro.  Mason and Forsberg traveled to Houston and appeared in a hearing in the class-action case.  They did not attend as Connelly Management's counsel in the NAI Class Action, but on behalf of Connelly Management because of concerns about Claro's work as counsel of record for the plaintiffs—including Connelly Management—in that class action.  (Docket Entry No. 14, Ex. F at 2, Ex. H at 2 (Forsberg and Mason affidavits)).  Mason also came to Texas on two occasions after the indictment issued, both times on behalf of Connelly or Connelly Management.  It is well settled that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of that state, even if the client resides in that state.  *See, e.g., Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-227 (8th Cir. 1987) (court did not have personal jurisdiction over the out-of-state attorneys or their law firm in part because the law firm did not maintain offices in the forum state, the attorneys did not live in the forum state, and the firm had never solicited business in the forum state); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("[W]hen a lawyer chooses to

13

represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum.").

The record does not show that the defendants engaged in continuous and systematic contact with Texas such that this court could exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15. The contacts are insufficient in both quantity and quality to support general personal jurisdiction against the defendants. The issue is specific personal jurisdiction.

### B.    Specific Personal Jurisdiction

Claro bases his claim of jurisdiction on the allegation that the defendants committed a tort in Texas by sending false information about him to federal law-enforcement agents and an AUSA in Houston, intending to procure an indictment against him. The alleged tort is malicious prosecution. The elements of that tort under Texas law are that:

> (1) a criminal prosecution was commenced against the plaintiff;
> (2) the defendant initiated or procured that prosecution;
> (3) the prosecution terminated in the plaintiff's favor;
> (4) the plaintiff was innocent of the charges;
> (5) the defendant lacked probable cause to initiate the prosecution;
> (6) the defendant acted with malice; and
> (7) the plaintiff suffered damages.

*Kroger Tex. Ltd. P'ship v. Suberu*, 2006 WL 1195331, at *7 (Tex. May 6, 2006) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)).

The question is whether the defendants' contacts with Texas, related to the investigation that led to the issuance of the indictment on March 25, 2004 constitute

14

"purposeful availment of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475, "such that the defendant 'should reasonably anticipate being haled into court' in the forum state," *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d at 419.

The Texas Supreme Court recently emphasized several aspects of a nonresident's "purposeful availment" of the privileges of conducting activities in the forum state. "First, it is only the defendant's contacts with the forum that count," not the "unilateral activity of another party or a third person." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (internal quotations omitted). "Second, the acts relied on must be 'purposeful' rather than fortuitous . . . a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" *Id.* (citations omitted).

In *Michiana Easy Livin' Country, Inc. v. Holten*, the Texas Supreme Court also made it clear that merely alleging that a defendant in a foreign state made tortious statements or communications that had harmful effects directed to Texas cannot be the basis for specific personal jurisdiction in Texas. In *Holten*, the Court expressly rejected personal jurisdiction based on the alleged effects of a tort, as opposed to where the defendant's contacts related to the transaction and events at issue occurred. The Court noted that focusing on where the defendant allegedly directed a tort incorrectly emphasized the relationship among the plaintiff, the forum, and the litigation, rather than among the defendant, the forum, and the litigation. The minimum-contacts analysis properly focuses "solely on the actions and reasonable expectations of the defendant." 168 S.W.3d at 790 (citing *Burger King*, 471 U.S.

15

at 481–82).  Looking at where the effect of an alleged "tort was directed," as opposed to the defendant's contacts with the forum relating to the subject matter of the litigation, improperly conflates the jurisdictional inquiry with the underlying merits, because the nonresident defendant can defeat jurisdiction only by showing that there was no tort.  "Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will.  Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will.  If committing a tort establishes jurisdiction, our colleagues will have to decide who is correct—and then the Texas jurisdictional rule will be: guilty nonresidents can be sued here, innocent ones cannot." *Id.* at 791.  "Instead, it is 'the defendant's conduct and connection with the forum' that are critical."  *Id.* at 798 (citing *Burger King*, 471 U.S. at 474).  The Court emphasized that the personal jurisdiction outcome should not turn on whether the defendant is sued in tort or contract, but on the defendant's purposeful availment.

The contacts relevant to specific personal jurisdiction in this case are those related to the criminal investigation that resulted in the issuance of the indictment that is the basis of the malicious prosecution claim.  In Texas, representation of  a client in the forum state by a nonresident attorney can give rise to specific jurisdiction against the attorney in a case based on an alleged breach of fiduciary duties owing to the client.  *See, e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("when the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state.").  In

16

this case, the defendant lawyers and law firm did not represent Claro and owed him no fiduciary obligation.  This case does not involve any alleged breach of duties owing to Connelly Management or Connelly.

The September 2003 appearance of Mason and Forsberg in Texas and the May 2005 appearance of Mason in Texas, as lawyers for Connelly and Connelly Management in the South Carolina case against Claro, are not related to the criminal investigation and indictment that is the basis of this malicious prosecution case.  These contacts are not relevant to the specific jurisdiction analysis.  *See Rossi v. Wohl*,  2006 WL 2371307 (N.D. Tex. Aug. 16, 2006).  The June 2005 issuance of subpoenas in the Houston federal district court, to secure depositions of Texas witnesses in Connelly and Connelly Management's South Carolina suit against Claro, and Mason's appearance in a hearing in Houston relating to those subpoenas, are not related to the criminal investigation and indictment and are not relevant to the specific jurisdiction analysis.

Contacts occurring after the indictment issued are also irrelevant to the specific jurisdiction inquiry because the malicious prosecution cause of action does not relate to those contacts.  *See Freudensprung v. Offshore Tech. Serv.*, 379 F.3d 327 (5th Cir. 2004).  The relevant contacts are those that occurred before March 25, 2004, when the indictment against Claro and others issued, and that relate to the criminal investigation resulting in the indictment.  The relevant contacts are the communications by which the defendants mailed documents to federal agents in Texas.

Different defendants sent documents from South Carolina to Houston on March 21, 2003, May 9, 2003, September 19, 2003, December 1, 2003, and December 18, 2003. These documents were sent after Mason received the February 2003 subpoena requesting any and all documents relating to the Connelly Management dispute with American Heartland. The issue is not whether the defendants committed the tort of malicious prosecution when they mailed documents from South Carolina responsive to the subpoena issued in February 2003. The issue is whether the defendants purposefully availed themselves of the benefits of conducting activities in Texas by mailing those documents.

Claro makes it clear in his brief that he does not base personal jurisdiction on the March 21, 2003 communication from Davis responding to the February 2003 subpoena. Claro argues that by sending the documents on March 21, 2003, the defendants satisfied the subpoena and completed their compliance. (Docket Entry No. 18 at 5). Claro argues that the subsequent communications by which the defendants sent additional documents to the federal agents in Texas were gratuitous and voluntary acts that subjected the defendants to personal jurisdiction in Texas. The defendants respond that the documents they sent to Texas were all in response to the February 2003 subpoena. (Docket Entry No. 14, Exs. F, G, H).

The February 2003 subpoena was broad, calling for "any and all documents relating in any way to Connelly Management's dispute with American Heatland [sic] et al., excluding any documentation relating to attorney work product or attorney client privilege." (Docket Entry No. 14, Ex. A). The subpoena had a return date of March 10, 2003 but allowed the recipient, Mark Mason, to send documents rather than actually appearing before the federal

18

grand jury.  The subpoena stated that it remained "in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court."  (*Id*.).

Claro emphasizes that the first communication from Davis, an associate with the Mason Law Firm, in South Carolina to the FBI agent in Houston stated that the materials sent were in "[i]n completion of your request."  Claro argues that this reference in the cover letter shows that the subsequent communications were not in response to the subpoena.  But the defendants sent cover letters accompanying documents as late as September 2004 and January 2005 stating that the documents being sent were in response to the subpoena issued to Mason in 2003.  (Docket Entry No. 15, Exs. 6, 7).  This argument does not show specific jurisdiction.

Claro also argues that the February 11, 2003 subpoena could not have required Mason to send documents that were not in his possession as of that date, but that Mason and the other lawyer defendants sent documents acquired or even created after that date.  The defendants respond that the documents they sent were all called for by the subpoena.

The subpoena is very broad.  It calls for all the documents related to the dispute between the defendants' client, Connelly Management, and an entity Claro had represented in setting up ERISA plans, American Heartland, excepting only documents subject to attorney-client privilege and work-product protection claims.  The subpoena is unlimited as to time.  Although a "federal district court has the power to quash a grand jury subpoena requesting documents "if compliance would be unreasonable or oppressive," see FED. R. CRIM. P. 17(c), *United States v. Calandra*, 414 U.S. 338, 346 (1974), no motion to quash or

for protection was filed in this case.  Mason was subpoenaed merely as a witness, and long-standing grand jury policy and practice suggests that witnesses (who are not even targets of the grand jury) are not entitled to test the limits of the grand jury's authority. *Calandra*, 414 U.S. at 345.  A witness such as Mason is "not entitled to urge objections of incompetency or irrelevancy, such as a party might raise."  *Id.*

In a similar case, the court held that a nonresident defendant's response to a subpoena—voluntary or compelled—by sending documents to the forum state does not subject the nonresident defendant to personal jurisdiction.  In *Rollins v. People's Bank Corp.*, 2004 WL 2725039 (S.D.N.Y. Nov. 29, 2004), a New York resident sued a Connecticut bank where the plaintiff had an account.  The plaintiff alleged that the defendant bank improperly provided to the New York State Division of Parole plaintiff's bank account records, which included bank statements, cancelled checks, and application information that the plaintiff had provided to defendant.  *Id.* at *1.  The plaintiff alleged that because of the bank records that defendant provided, state parole officials "wrongfully accused plaintiff of failing to accurately disclose his financial situation, and/or misleading parole officials about his assets, and the source of his income," revoked his parole, and incarcerated him for approximately six months.  *Id.*  The plaintiff alleged that had defendant not disclosed plaintiff's records, plaintiff's parole would not have been revoked and he would not have been reincarcerated. The plaintiff asserted claims of breach of confidentiality, breach of contract, intentional infliction of emotional distress, gross negligence, and negligence.

The defendant bank moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  The defendant asserted that it provided the records in response to a subpoena and related correspondence from an investigator of the New York State Bureau of Criminal Intelligence.  The court granted the defendant's motion to dismiss for lack of specific personal jurisdiction.  The court concluded that complying with a subpoena by sending documents to the forum state did not constitute purposeful availment of the privilege of conducting activities in that state or invoking the benefits and protections of the law of that state.  "Defendant simply complied with a subpoena. All of defendant's customer records are maintained in Connecticut. . . .  All of defendant's actions in regards to the subpoena were performed in Connecticut. . . .The decision to disclose, as well as the act of disclosing, were made in Connecticut.. . . [The] plaintiff has proffered no case law supporting the position that compliance with a subpoena, even voluntarily, constitutes a tortious act."  *Id.* at *4.

In this case, Claro has provided no authority for his argument that compliance with a subpoena is a purposeful availment of the forum state.  Mason received a facially valid, broad grand jury subpoena.  He complied by sending materials, some within the next month, some obtained and provided later.  There is no basis in the Federal Rules of Criminal Procedure or case law to draw a bright line between the initial response to the grand jury subpoena, deeming it complete compliance that could not form the basis of personal jurisdiction over the out-of-state defendants, and the later responses, deeming them gratuitous acts that would subject the defendants to personal jurisdiction in Texas.  Under the applicable

21

law and the broad terms of the subpoena, this court concludes that the defendants'
communications with the Houston federal agents and AUSA were not voluntary, purposeful
acts by which the defendants availed themselves of the benefits and privileges of Texas law,
subjecting them to personal jurisdiction in this State.

This result is consistent with cases holding that a malicious prosecution plaintiff
cannot base personal jurisdiction over a nonresident defendant on communications to law-
enforcement agents in the state. *See Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 917
(D.D.C.1980) (holding that a malicious prosecution plaintiff, who was arrested and
incarcerated in his home state, could not establish personal jurisdiction over the out-of-state
defendant who reported a theft to the police); *Glacier Refrigeration Serv., Inc. v. American
Transp. Inc.*, 467 F. Supp. 1104, 1107 (E.D.N.Y. 1979) (applying the New York long-arm
statute in a malicious prosecution action and finding that the defendants "have performed no
purposeful acts in New York in relation to the causes of action which indicate that they have
availed themselves of the privilege of conducting business activities in the State, thereby
invoking the benefit and protection of New York law").

The motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is granted.

## IV.    Conclusion

The motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is granted.

This court does not reach the remaining grounds for dismissal or the alternative motion to transfer.

SIGNED on February 27, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge